## No. 7726.

ARCHIBALD W. BAIRD, UNDER-TUTOR VS. JOHN A. STEVENSON.

An heir of a deceased spouse cannot sue for a specific object as part of the community property, as for example, land and its revenues, when there has been no liquidation of the community debts or other settlement of the community, because the heir's rights are residuary, and *non constat* that anything will remain after such settlement.

Nor can the heir avail herself of the benefits of the community without also sharing its misfortunes, and therefore before she can recover any part of the community property, she must have assisted in paying its debts — that is, she must have provoked a settlement of the community.

The surviving spouse who has concocted legal proceedings to prepare the way for a suit, ostensibly in the interest of the heir of the deceased, must be diligent in protecting the interest of his own vendee, whose money he voluntarily received, if he would avoid the imputation or suspicion of withholding information of the affairs of the community that would tell against the heir's claim.

APPEAL from the District Court for Red River. HALL, J. *ad hoc.*

*L. B. Watkins* for Plaintiff.    *J. F. Pierson* and *Jack* for Defendant Appellant.

MANNING, C. J.   Bythel H. Baird was married in Mississippi, January 18, 1848, of which State both himself and his wife were residents.   In the following month he purchased 130 acres of land on Red River from one Blackstone, he being described in the deed as a resident of Mississippi, and the price being $2,000, of which one-fourth was paid cash, and the residue promised to be paid in one and two years.   In February, 1851, he bought of one Hammett 128 acres of land adjoining his first purchase, the price being $2,000, of which $625 was paid cash, and for the residue notes were given. These two tracts are a part of the Squirrel Point Plantation.

The sole issue of Baird's marriage was a daughter.   Her mother died March 26, 1851, in Natchitoches Parish, to which place Baird had removed with his family between the dates of the two purchases. Her death was a month and a day after the second purchase.   In August, 1863, Baird sold the Squirrel Point Plantation to John A. Stevenson for fifty thousand dollars.   It contained 640 acres, of which 258 acres was acquired by Baird as above set out.   In December, 1865, Stevenson sold to one Harris an undivided one-half of all the land for $8,000.   In the year following the close of the war, *i.e.*, in March, 1866, Baird filed his petition announcing his wife's death, which had occurred fifteen years before — reciting that she left an only child and heir, who was still a minor — praying an inventory of his deceased wife's effects, and the appointment of an under-tutor, and the confirmation of himself as tutor.   An inventory was taken, the whole property figuring upon it being the Blackstone and Hammett tracts of land which he had sold three years before, and Archibald W. Baird, the present plaintiff, was appointed under-tutor.   All of this was preliminary to this suit, and accordingly it was soon filed. In it, the plaintiff sues for the one-half of the inventoried lands and their rents.

Stevenson excepted to the action on the ground that the minor cannot sue for any specific part of the community property until there has been a settlement of it — that her rights are residuary and *non constat* that anything remained after the liquidation of its debts — that she has not alleged that the community had been settled, nor that there was any residuum, nor that she had been put in possession thereof. This exception was referred to the merits.

Phelan *v.* Ax, 25 Ann. 379, presented the same question, and the point was ruled in the defendant's favour. In Williams *v.* Fuller, 27 Ann. 634, the court say, " the plaintiff fails to set forth a cause of action. It has been decided by this court that a surviving husband, the head of the community, may sell community property after the death of his wife. The title of the property stands in his name on the records of the parish where the property is situated, and he is personally bound for the debts of the community." It is not necessary to affirm this *dictum* to its fullest extent in this case. The facts disclosed by the record shew that the community was debtor to Baird in a considerable sum. He had property in Mississippi, at the time of his marriage, and his wife had none. He had inherited $5,000, had sold real estate there for $3,000, all of which presumably was used by the community. The Hammett purchase was made only a month before his wife's death, and the principal part of the price was a credit maturing after that event. The testimony necessarily took a wide range, and there is an abundance of it. It is really such testimony as would be appropriate in a probate court when endeavoring to ascertain the condition of Mrs. Baird's succession, and this shews the importance and necessity of the rule invoked by the exceptor.

It is trite to say that the husband is the master of the community, and is responsible for its debts. If, after its dissolution he pays its debts from his separate property, or if his separate funds were used in the purchase of property during the community, it is debtor to him. The heir of the deceased spouse cannot recover any portion of the community until she offers to return the benefits received. Kellogg *v.* Duralde, 26 Ann. 234. It is extremely doubtful from the testimony in this record whether the community was worth anything, if indeed it is not made certain that it was worth nothing. The suit looks as if Baird was contriving a way to evade the sale he had

deliberately made, and to wrest from the man who had paid him what he willingly received, a large part of the property conveyed to him, and this not in the interest of his daughter, but of his own; or if in hers, he is making no effort to protect his vendee by shewing the liabilities of the daughter as heir of her mother to him. All this had to be shewn by the vendee by such testimony as could be gathered more than a quarter of a century after the wife's death. The exception should have been sustained.

We shall not conclude the rights of the daughter by an absolute judgment.

*Judgment reversed, exception sustained, and suit dismissed as if non-suit.*